**04cv12655 RWZ**

**EXHIBIT A**

## AFFIDAVIT OF SPECIAL AGENT CHRISTOPHER DIORIO

I, Christopher Diorio, state the following under oath:

1. I am a Special Agent employed by U.S. Immigration and Customs Enforcement ("ICE"), Department of Homeland Security, Boston, Massachusetts. I have held this position since August, 2002. Prior to my current position, I was a United States Coast Guard counter narcotics officer for a period of four (4) years. During my career as a Special Agent, I have been conducting narcotics investigations, including the seizure of narcotics, currency and the individuals involved. I have received training in the enforcement of Customs, Immigration and ICE laws, related laws and procedures, including among other things, the provisions of Title 21, regarding currency that constitutes money furnished or intended to be furnished by a person in exchange for a controlled substance, in violation of Title 21, proceeds traceable to such an exchange, and/or money used or intended to be used to facilitate a violation of Title 21.

2. I submit this affidavit in support of a Complaint for Forfeiture in rem against $6,442.00 in United States currency (the "Defendant Currency"), which was seized on May 25, 2004, from Hugo Carmona-Londono, also known as Gustavo Flores. As

1

described below, I have probable cause to believe that the Defendant Currency constitutes money furnished or intended to be furnished by a person in exchange for a controlled substance, in violation of Title 21, proceeds traceable to such an exchange, and/or money used or intended to be used to facilitate a violation of Title 21.

3. I obtained the information contained in this affidavit through my involvement in the investigation leading to the seizure of the Defendant Currency, and from participating in conversations with and reviewing reports of other law enforcement personnel, including members of the Massachusetts State Police (MSP), the United States Drug Enforcement Administration (DEA), and the Bureau of Immigration and Customs Enforcement (ICE).

4. On May 19, 2004, DEA agents operating in Ecuador seized a TNT courier service package addressed to Elieen Pagan, 200 Lexington Street, East Boston, Massachusetts, which contained approximately 500 grams of heroin, a controlled substance. On May 25, 2004, law enforcement agents and officers conducted a controlled delivery of a sham package to the 200 Lexington Street address.

5. Special Agent ("S/A") John Coleman, in TNT delivery attire, had a conversation in the second floor hallway with two individuals later identified as Elger Sanchez-Zapata ("Sanchez-

Zapata") and Edison Osorno ("Osorno"). Both of these individuals indicated to S/A Coleman that they were expecting the package and that Elieen Pagan was not home. Sanchez-Zapata then signed for the package. At that point, Sanchez-Zapata and Osorno were informed that the package contained 500 grams of heroin. They were pat frisked, and officers performed a protective sweep of the apartment.

6. Sanchez-Zapata first told officers that his name was Jose Cotto, and produced a Massachusetts driver's license in that name. During the interview, which took place in the front bedroom of the apartment, Sanchez-Zapata also attempted to hide approximately $2,000 in U.S. currency on the bed.

7. When interviewed, Osorno said that he did not know anything about the heroin in the package, and that it was his friend's (Sanchez-Zapata's) package. An investigative check revealed that Osorno had an outstanding default warrant for Possession with Intent to Distribute Class B (Cocaine). In addition, officers discovered numerous fraudulent identity papers for the two individuals.

8. As a result of the controlled delivery and the subsequent interviews, Sanchez-Zapata and Osorno were arrested for violations of Massachusetts law and detained by ICE for immigration violations. Osorno, the person accepting the

3

package, stated that he was accepting it for his friend, Sanchez-Zapata, whom he believed to be involved in drugs.

9. Osorno indicated that Sanchez-Zapata's home was located at 376 Salem Street, apartment 1, Malden, Massachusetts. At approximately 5:30, Sergeant Mark Marron of the MSP, S/A Kevin Jarvis, and S/A Coleman went to this address and spoke with Yaned Sanchez. They informed Yaned Sanchez that they were conducting a narcotics investigation and would like to speak with her. Yaned Sanchez invited the officers into her apartment. During the course of the interview, Yaned Sanchez was questioned about her husband, Elger Sanchez-Zapata's, involvement in drugs. Yaned Sanchez stated that she knew nothing about the package containing drugs from Ecuador or anything about her husband being involved with drugs. After giving consent for a search of the apartment, Yaned Sanchez turned over a number of fraudulent documents she had in her bedroom. Officers seized a Massachusetts driver's license in the name of Elger Sanchez-Zapata, which bore a fraudulent Social Security number. There were also documents in the name of "Jose Cotto," bearing a photo of Elger Sanchez-Zapata.

10. At approximately 6:15 p.m., Hugo Carmona-Londono ("Carmona-Londono") knocked on the door to 376 Salem Street, apartment 1, and was allowed entry into the apartment. An

4

interview of Carmona-Londono, who initially stated that he was Gustavo Flores, revealed that his license was fraudulently obtained.  Carmona-Londono stated that he did this in order to work.  Carmona-Londono also had a vehicle registered under his false name, a red 2002 Nissan Altima which was parked on Salem Street.  Carmona-Londono stated that he had approximately $6,000 in the car.  Carmona-Londono was arrested on Immigration charges; Yaned Sanchez was told to report to INS at a later date.

11.  As a result of the false registration violation, MSP impounded the red Nissan Maxima.  During a routine inventory search, Sgt. Marron discovered approximately $6,000 in U.S. currency, bundled in $1,000 increments, in the center console of the car.  The Maxima was transported to the MSP barracks in Medford, Massachusetts.  Trooper James Bazzinotti and his trained narcotics detecting canine were summoned and presented to the Maxima.  The narcotics detecting canine alerted to the $6,000 located in the center console of the Maxima, indicating the presence of narcotic odor on the currency.  The money was secured.

12.  Carmona-Londono was further interviewed regarding the currency.  Carmona-Londono said that he was going to buy a car from a friend who works at a dealership in Lynn, but he could not tell officers the name of the dealership.  He claimed not to know

the name of the friend from whom he was going to buy the car. He also could not or would not explain why he was in Malden if he were going to purchase a vehicle in Lynn that evening. He stated that he had not contacted his friend to tell him that he (Carmona-Londono) was planning to buy a car. Carmona-Londono said that his friend worked seven days a week, so there was no need to call ahead.

13. Carmona-Londono said that he works long hours as a painter (at $8.50 per hour) for Five Star Painting, owned by Jose Pinto. He said he had been off recently due to the weather, but that he had saved his money. When agents contacted Jose Pinto, the owner stated that Carmona-Londono was a former employee who had not worked for him in five or six months.

14. Carmona-Londono stated that his rent was currently $1,280 per month. He also said that he had a car loan for over $19,000 (with a monthly payment of $429 per month), and a mobile telephone bill of approximately $50 per month.

15. Based on the above information, I have probable cause to believe that the $6,442 in United States currency constitutes money furnished or intended to be furnished by a person in exchange for a controlled substance, in violation of Title 21, proceeds traceable to such an exchange, and/or money used or intended to be used to facilitate a violation of Title 21. The

6

Defendant Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

Signed under the pains and penalties of perjury this 20th day of December, 2004.

                              _____
                              Special Agent Christopher Diorio
                              United States Immigration and
                              Customs Enforcement, Department of
                              Homeland Security