**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **04 CV 12655 RWZ** |
| | ) | |
| **$6,442.00 IN U.S. CURRENCY,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Now comes claimant Hugo Carmona and files this memorandum in support of his motion to dismiss the government's forfeiture complaint and enter an order requiring the government to return the $6,442.00 in U.S. Currency seized from Mr. Carmona forthwith.

In his motion to dismiss the claimant cites two reasons why the complaint should be dismissed. 1) The government's complaint is untimely and pursuant to 18 U.S.C. § 983(a)(3)(B), the seized currency must promptly be released and no further action to effect a civil forfeiture of the currency may be taken by the government. 2) The government's complaint is deficient and the Court erred when it certified the complaint by finding probable cause for forfeiture.

**Facts:**

On May 25, 2004 Massachusetts State Police and U.S. Customs Officers arrested the claimant and charged him with violating a Massachusetts Registry of Motor Vehicles [RMV] law (M.G.L. c. 90, § 24B - possession of forged or counterfeit RMV documentation) and identity fraud (M.G.L. c. 266, § 37E). Additionally the

claimant was taken into custody and deportation/removal proceedings were initiated in the United States Immigration Court. In conjunction with the arrest, the law enforcement officers seized $6,442.00 in United States currency from the defendant's motor vehicle.

The Bureau of Customs initiated administrative forfeiture proceedings shortly after the currency was seized. In a timely manner[1] the claimant filed a claim, as per 18 U.S.C. § 983(a)(2)(A)-(D). Additionally, on the claim form provided to the claimant by the Bureau of Customs, the claimant demanded that Customs immediately send the case to the U.S. Attorney for court action. The claim and judicial forfeiture demand was filed on September 16, 2004, by mailing the claim and demand to Mr. Stephen Leonard, Fines, Penalties and Forfeiture Branch Chief for the Bureau of Customs in Boston. Attached are Exhibits 1(a)-1(c), copies of the cover letter, claim and judicial forfeiture demand. The government waited 95 days, until December 20, 2004, before it filed its forfeiture complaint.

In support of probable cause to initiate judicial forfeiture proceedings, the government alleged that the seized currency was money furnished or intended to be furnished in exchange for a

---

[1] Customs acknowledged that its first notice of seizure and intent to forfeit was sent to Mr. Carmona's home address even though Customs knew, or should have known, that Mr. Carmona was detained.

controlled substance, proceeds traceable to such an exchange and/or money used or intended to be used to facilitate a violation of Title 21. To support these allegations the government referenced an affidavit by U.S. Immigration and Customs Enforcement [ICE] Special Agent Christopher Diorio. S/A Diorio stated that prior to seizing the currency certain events occurred.

1. On May 19, 2004, DEA agents operating in Ecuador seized a courier package addressed to Eileen Pagan, 200 Lexington Street, East Boston, Massachusetts. The package contained 500 grams of heroin.
2. On May 25, 2004, a sham delivery of the package was made by law enforcement agents.
3. Two individuals, present at the Lexington Street address, Elger Sanchez-Zapata and Edison Osorno, indicated that they were expecting the package and that Eileen Pagan was not home. After Sanchez-Zapata signed for the package, the law enforcement agents revealed their hoax. Sanchez-Zapata and Osorno were searched, as was the apartment.
4. Initially, Sanchez-Zapata claimed that he was Jose Cotto and produced a Massachusetts driver's license in that name. Sanchez-Zapata also tried to hide $2,000.
5. Osorno said that he did not know anything about the

heroin in the package and that the package was for Sanchez-Zapata. Osorno had an outstanding default warrant for possession with intent to distribute cocaine. Sanchez-Zapata and Osorno were arrested.

6. Osorno stated that Sanchez-Zapata lived at 376 Salem Street, Apartment 1, Malden, Massachusetts. State and federal law enforcement officers went to that address at about 5:30 p.m.

7. At the Malden apartment the police spoke to Yaned Sanchez and learned that she was married to Sanchez-Zapata. Yaned Sanchez stated that she knew nothing about the package sent to the East Boston address nor was she aware that her husband was involved with drugs.

8. The police were permitted to conduct a search of Yaned Sanchez's apartment. They discovered Sanchez-Zapata's driver's license and other documents in the name of Jose Cotto, but which bore a photo of Sanchez-Zapata.

9. At 6:15 p.m. the claimant knocked on the door of Yaned Sanchez's apartment and was allowed entry into the apartment. Initially, the claimant, using a fraudulent Massachusetts driver's license, identified himself as Gustavo Flores. Carmona stated that he used the Flores identification in order to work. While in police custody and without first receiving warnings pursuant

to Miranda, Carmona further made statements which were not voluntary and which informed the police that he had arrived in a red 2002 Nissan Altima (registered in the name of Flores) and that he had approximately $6,000 in the car. Carmona was arrested on Immigration charges.

10. The police seized the money which Carmona had told the police was in his car. The currency was bundled in $1,000 increments in the center console of the car.

11. A Massachusetts State Police narcotics detecting dog "alerted" to the $6,000 located in the center console of the car.

12. Carmona, who never received any Miranda warnings and never made any voluntary statements, said that he was going to use the $6,000 to buy a car at a car dealership in Lynn. He said that he was going to buy the car from a friend, whose name he could not remember, who worked at the dealership.

13. Carmona stated that until recently he had been working long hours as a painter. His pay was $8.50 per hour. This was confirmed by Carmona's prior employer, Jose Pinto. Mr. Pinto said that Carmona had last worked for him about five or six months earlier.

14. Carmona stated that his rent was $1,280 per month, the note on his car was $429 per month and his cellular

phone plan was $50 per month.

**Argument:**

1. **The Complaint is Untimely.**

Prior to any judicial forfeiture proceedings, if an authorized federal law enforcement agency seizes money and intends to forfeit the money, the agency must send written notice to interested parties. 18 U.S.C. § 983(a)(1)(A). A party with an interest in money seized for forfeiture may file a claim with the seizing authority. 18 U.S.C. § 983(a)(2)(A). A claim is considered filed when it is placed in the U.S. Mail. F.R.Civ.P. 5(b)(2)(B).[2] Within 90 days after a claimant files his claim, the government is required to file a forfeiture complaint or take certain remedial steps. 18 U.S.C. § 983(a)(3). If the government does not, the government shall promptly release the property and may not take any further action to effect the civil forfeiture of such property. 18 U.S.C. § 983(a)(3)(B).

In the instant case, the claimant filed his claim with Customs on September 16, 2004 when his attorney mailed the Customs claim form the claimant had signed on September 15, 2004. The government filed its forfeiture complaint on December 20, 2004, 95 days after the claimant filed his claim with Customs.

The government cannot cite any reason why it waited more

---

[2] The laws and rules, including the Federal Rules of Civil Procedure, governing forfeiture for violations of the customs laws govern civil drug forfeitures. 21 U.S.C. § 881(d).

than 90 days to file its complaint. The supporting affidavit by S/A Diorio contains allegations from May 2004. The government did not conduct any further investigation. Even if the government needed to or did conduct an investigation which was not completed until December 20, 2004, the government failed to comply with any of the remedial steps, as set forth in 18 U.S.C. § 983(a)(3)(B)(II). The government neither obtained a criminal indictment containing a forfeiture count nor sought an enlargement of time. Accordingly, the money should be returned to Mr. Carmona and the government may not take any further action to effect the civil forfeiture of the money. 18 U.S.C. § 983(a)(3)(B).

**2. The Complaint does not Allege Probable Cause to Forfeit.**

Forfeitures, the seizure of a citizen's property, are "strong medicine, disfavored in our jurisprudence." United States v. One Parcel of Real Property, 964 F.2d 1244, 1248 (1st Cir.1992). The possession of cash, even in large amounts, does not create a reputable presumption that one is engaged in criminal activity. United States v. $36,634, 103 F.3d 1048, 1055 n. 9 (1st Cir.1997). To do so would be to put at risk virtually anyone who does not bother to carry appropriate documentation for their cash. This would be especially so for those citizens who are already the most vulnerable -- minorities, the young, and the poor. United States v. One Lot of U.S. Currency Totaling

$14,665, 33 F.Supp. 2d 47, 49 (D.Mass. 1997).

Neither the courts nor Congress are empowered to suspend the Constitution so that the government may more effectively wage the war on drugs. See, e.g. Florida v. Bostick, 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). A democracy, after all, does not require that its citizens explain themselves, their plans, and their intentions to the government, absent lawful justification, carefully considered. And it certainly does not permit the seizure of a citizen's property, as here, without probable cause.

In order to initiate a forfeiture complaint, the government need demonstrate probable cause for a forfeiture. Under 21 U.S.C. § 881(d), which incorporates 19 U.S.C. § 1615, the Government must make that showing at the outset of a forfeiture proceeding.

For forfeitures initiated subsequent to August 23, 2000, in order to forfeit property, the government must demonstrate that property is subject to forfeiture by a preponderance of the evidence. 18 U.S.C. § 983(c)(1). The government may use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture. 18 U.S.C. § 983(c)(2). Importantly, no complaint may be dismissed on the ground that the government does not have adequate evidence at the time the complaint is filed

to establish the forfeitability of the property. 18 U.S.C. § 983(a)(3)(D).

The claimant is not moving to dismiss the complaint because the government has not established the forfeitability of the seized money in its complaint. The claimant contends that the complaint must be dismissed because it does not comply with 19 U.S.C. § 1615. The forfeiture complaint must allege facts sufficient to establish probable cause to believe that the defendant currency is subject to forfeiture.

As previously stated, 21 U.S.C. § 881(d) provides that civil drug forfeitures are governed by the provisions of laws relating to the forfeiture for the violation of customs laws. Included in those provisions is 19 U.S.C. §1615, which states:

> In all suits or actions brought for forfeiture ... where the property is claimed by any person, the burden of proof shall lie upon such claimant ... Provided, that probable cause shall be first shown for the institution of such suit or action, to be judged of by the court ...

See United States v. The Premises and Real Property at 4492 South Livonia Road, 889 F.2d 1258, 1267 (2d Cir. 1989). To meet the probable cause requirement, the government's grounds for bringing the complaint "must rise above the level of mere suspicion but need not amount to what has been termed 'prima facie proof.'" United States v. Banco Cafetero Panama, 797 F.2d 1154, 1160 (2d Cir. 1986); see United States v. One 1978 Chevrolet Impala, 614 F.2d 983, 984 (5th Cir. 1980).

The evidence the government proffers to establish probable cause to institute forfeiture proceedings must be strong enough to support reasonable grounds for belief that an actual, rather than purely theoretical, connection exists between the currency in claimant's possession and the drug trade. See, e.g., United States v. RR # 1, Box 224, 14 F.3d 864, 869 (3rd Cir. 1994) (stating that the government must "establish some connection between the alleged criminal [drug] activity and the defendant property the government seeks to forfeit"); see also $36,634.00, 103 F.3d at 1053 (stating that probable cause for forfeiture means "reasonable grounds" for believing that the currency is connected to illegal drug activity).

In order to survive a motion to dismiss, therefore, the government must demonstrate probable cause in its complaint that the property itself -- regardless of the activities of the property's owner -- was connected with narcotics activity. United States v. Banco Cafetero Panama, 797 F.2d 1154, 1160 (2nd Cir.1986); United States v. Property Known as 303 W. 116th St. New York, 710 F.Supp. 502, 505 (S.D.N.Y.1989).

The government contends that there is probable cause to believe that the defendant currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6). The government contends that the defendant currency is a drug proceed or is intended to be used to purchase drugs. The government's complaint fails to

satisfy the probable cause requirement, because it alleges facts which in no way connect the defendant currency to any drug activity. The government's proof simply is not strong enough to establish probable cause to believe that there had been, or was about to be, a violation of the drug laws involving this currency.

In reviewing the sufficiency of the government's information, the Court should review each piece of evidence only to determine whether it is probative, not whether it establishes probable cause standing alone. United States v. 255 Broadway, 9 F.3d 1000, 1004 (1st Cir.1993); citing United States v. $67,220.00 in United States Currency, 957 F.2d 280, 285 (6th Cir.1992). Because there are many variables in the probable cause equation, each case necessarily turns on its own unique facts. Id. citing United States v. Maguire, 918 F.2d 254, 258 (1st Cir.1990).

**a. The controlled delivery of heroin.**

The government supports its probable cause argument by explaining that on May 25, 2004, the day police seized the money from the defendant's car, the defendant was visiting Yaned Sanchez, the wife of Elger Sanchez-Zapata. The defendant visited Ms. Sanchez at 6:15 p.m. at an apartment in Malden, Massachusetts. Earlier on May 25, 2004, Sanchez-Zapata had received a package (delivered under controlled circumstances by

law enforcement officers) addressed to Eileen Pagan at an address in East Boston. That package had been shipped to Eileen Pagan at the East Boston address from Ecuador and contained 500 grams of heroin. The package had been intercepted by the police in Ecuador.

There was no evidence that anyone, let alone the claimant, knew that Sanchez-Zapata was going to or, in fact, did receive heroin on May 25, 2004. Obviously, Sanchez-Zapata, who was in custody, didn't alert anyone that he had received a package of heroin. Accordingly, the claimant's appearance at the apartment where Sanchez-Zapata lived with Sanchez could not have been related to the controlled delivery of heroin to Sanchez-Zapata earlier that day in a completely different city in Massachusetts. Also, since there was a search of the Malden apartment and S/A Diorio's affidavit makes no reference to evidence of drug dealing discovered during that search, the Court should assume that there was nothing about the Malden apartment which suggested that it was a location where illegal drugs were stored, bought or sold.

The government may contend that the claimant's appearance at the Malden apartment, coupled with his statements about the currency and his employment,[3] and the fact that a drug sniffing

---

[3] For purposes of probable cause, the claimant's statements should not be considered. They were made while in police custody. The claimant's statements were not voluntary, nor was he given his Miranda rights. (See Ex. 2) United States v. Bryam, 145 F.3d 405, 407 (1st Cir. 1998). The Claimant is

dog alerted to the currency established probable cause. Individually and collectively, the evidence contained in S/A' Diorio's affidavit did not establish probable cause to initiate judicial forfeiture. United States v. $5,000 and $9,750, 40 F.3d 846 (6th Cir. 1994) (evidence that claimants, who fit informant's description of drug couriers, possessed a combined $14,750 was insufficient to establish probable cause to forfeit pursuant to 18 U.S.C. § 881(a)(6)).

**b. The claimant's statements.**

Evidence concerning a claimant's allegedly "suspicious" statements are not particularly probative factors because, at best, they suggest involvement in some unspecified furtive activity; they do not indicate, more specifically, that the claimant had engaged, or was about to engage, in a drug sale with this currency. E.g., United States v. $5,000 in United States Currency, 40 F.3d 846, 850 (6th Cir.1994) (stating that claimant's evasive explanation of purpose of trip provided, at best, "inchoate and unparticularized suspicion"); United States v. $191,910.00, 16 F.3d 1051, 1072 (9th Cir. 1994) (observing that discrepancies in claimant's story raised "a suspicion that [he] was involved in illegal activities, but not probable

---

well aware of the holding in United States v. Patone, __ U.S. __, 124 S.Ct. 2620 (2004). In the instant case, the defendant's statements were neither voluntary nor the product of a proper Miranda warning.

cause").

In this regard, the claimant provided consistent answers concerning his employment and his intended purpose with the relatively small amount of money. For example, the claimant said that he recently worked long hours as a painter, but had stopped working due to the weather. That statement was confirmed when the claimant's previous employer told the police that the claimant had worked for him up to 5 or 6 months before May 25, 2004. It makes sense that in December or November 2003 (5 to 6 months earlier) the claimant would have been laid off from a job as a painter due to bad weather.

Similarly, the fact that the claimant had $6,442 in currency is consistent with intending to purchase a car from a "friend" who worked at one of the numerous car dealerships in Lynn, Massachusetts.[4] Who among us hasn't been approached by a car salesman and been called "my friend"? It makes sense that the claimant would want to purchase a car for around $6,000 so he can sell the car he owns, with a $19,000 note and a $429 monthly payment requirement.

**c. The dog sniff.**

With respect to the fact that a drug sniffing dog alerted to the currency, a positive alert to the presence of narcotics is

---

[4] Exhibit 3, a city-data.com economic report, indicates that there are at least thirteen car dealerships in Lynn.

insufficient to establish probable cause. See, e.g., United States v. $5,000, at 849-50 (citing number of studies showing that vast majority of U.S. currency is contaminated with drug residue and quoting law enforcement officers questioning relevance of dog sniff tests); United States v. $9,800, 952 F.Supp. 1254, 1261 (N.D.Ill. 1996) ("the government must come forward with more than a 'drug courier profile' and a positive dog sniff ..."); United States v. $80,760, 781 F.Supp. 462, 476 (N.D.Tex.1991), aff'd, 978 F.2d 709 (5th Cir.1992) (dog sniff insufficient to establish probable cause) and United States v. $40,000, 999 F.Supp. 234, 239 (D.P.R. 1998).

Moreover, a great many courts have aggressively questioned the probative value of positive "dog sniffs" on currency altogether. See, e.g., United States v. $30,060, 39 F.3d 1039, 1041-43 (9th Cir. 1994) (citing numerous cases and studies challenging probative value of canine alerts); United States v. $639,558, 955 F.2d 712, 714 n. 2 (D.C.Cir.1992) (referring to scientific testimony that 90% of all cash in the United States contains sufficient quantities of cocaine to alert a narcotics detection dog); Jones v. U.S. Drug Enforcement Agency, 819 F.Supp. 698, 719-21 (M.D.Tenn. 1993) ("the continued reliance of courts and law enforcement officers on dog sniffs to separate 'legitimate' currency from 'drug-connected' currency is logically indefensible"). The positive alert is probative in demonstrating

that the subject currency had at some point been in contact with drugs. However, these tests tell us very little about whether the currency was actually exchanged for or intended to be exchanged for drugs by the claimant.

**d. The amount of currency and the way it was kept.**

The amount of currency cannot be considered a factor pointing towards probable cause to forfeit. A large sum of cash in a vehicle occupied by individuals previously convicted of drug offenses provides the requisite connection between claimants' currency and illegal drug activities. E.g., United States v. $149,442.43 in United States Currency, 965 F.2d 868, 877 (10th Cir.1992); $67,220.00, 957 F.2d at 285. However, the Court should not view the circumstances presented in the instant case as particularly probative of a narcotics nexus.

For one thing, the amount of money in claimants' possession is consistent on its face with his statement that he intended to purchase a car, a factor that weighs in his favor in evaluating the totality of the circumstances. Also, it is significant that the claimant did not lie about the amount of cash he possessed when the police questioned him, and he informed the police that the currency was in his car. Both of those considerations weigh in claimant's favor in the probable cause calculus. See, e.g., $67,220.00, 957 F.2d at 286 (holding that government had probable cause to forfeit based upon fact that claimant twice understated

amount of cash he was carrying); United States v. $215,300, 882 F.2d 417, 418-19 (9th Cir. 1989) (finding probable cause to forfeit where, *inter alia*, claimant lied about amount of money he possessed, stating he had only $15,000, where search revealed additional $201,000 in his socks and apron); United States v. $83,310.78, 851 F.2d 1231, 1235 (9th Cir. 1988) (probable cause found where police found $125,410 in cash in claimant's home, individual attempted to hide cash, and everyone present consistently denied ownership of money); $40,000 in United States Currency, at 237 (finding that government failed to establish probable cause based upon, *inter alia*, the fact that claimant informed police officer of the quantity of cash that he was carrying and made no attempt to lie about the amount).

Thus, while the possession of a large sum of money can, in some cases, be viewed as indicative of a claimant’s involvement in drug transactions, given the totality of circumstances and the fact that claimant Carmona had a relatively small amount of cash in his possession, the Court should not find his possession of the cash at issue here as strongly suggestive of a narcotics nexus. In fact, on balance, this factor appears rather neutral.

As for the manner of packaging, thousand dollar bundles, the government has not presented evidence that this method of storage is unique to the drug trade. See, e.g., $30,060.00, 39 F.3d at 1044 (rejecting government's contention that drug dealers carry

their money in wrapped bundles and that the amount of money was consistent with the cost of two kilograms of cocaine, stating that the government "provides no authority for these contentions which are, in any case, speculative"). Moreover, there is little significance in the fact that the claimant's money was concealed, as few people carry money in any way other than concealed. $36,634, 103 F.3d at 1055 n. 8.

Thus, the government has failed to provide evidence in the record that would support the conclusion that the manner in which the currency was packaged weighs in the government's favor.

**e. The defendant's lack of a prior criminal record.**

The government cannot point to any prior drug convictions as supplying the requisite proof that claimants' currency could be linked to drug activity. Evidence of a prior drug conviction is probative of probable cause to forfeit currency in the claimant's possession under § 881(a)(6), E.g., United States v. $22,474.00, 246 F.3d 1212, 1217 (9th Cir. 2001); $83,310.78, 851 F.2d at 1236. Just as a defendant's criminal record may be considered a probative factor in evaluating probable cause in the Fourth Amendment context, e.g., United States v. Conley, 4 F.3d 1200, 1207 (3rd. Cir. 1993); United States v. Frost, 999 F.2d 737, 744 (3d Cir.1993), the claimant's lack of a criminal record must factor against probable cause.

**Conclusion:**

The complaint should be dismissed because it is untimely. By statute, the defendant currency should be returned and the government may not take any further action to forfeit the currency.

Even if the complaint had been filed in a timely manner, the Court should dismiss the complaint because the probative force of the credible evidence in the complaint does not support a contention that the government has satisfied its initial burden of establishing that there is probable cause to file the forfeiture complaint. Here, the evidence upon which the government relies simply is too weak, both qualitatively and quantitatively, to demonstrate probable cause that the money was, in fact, drug-related.

**Respectfully Submitted**
**HUGO CARMONA**
**By his attorney:**

**J. Thomas Kerner**
**MA BBO # 552373**
**Attorney at Law**
**230 Commercial Street**
**First Floor**
**Boston, MA 02109**
**(617) 720-5509**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | |
| v. | ) | 04 CV 12655 RWZ |
| $6,442.00 IN U.S. CURRENCY, Defendant. | ) | |

**CERTIFICATE OF SERVICE**

Now comes counsel for claimant Hugo Carmona and certifies that a copy of the attached filing has been served on the United States by sending a copy to:

Ms. Shelbey D. Wright
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

Date 2/10/05

Respectfully Submitted
HUGO CARMONA
By his attorney:

J. Thomas Kerner
MA BBO # 552373
Attorney at Law
230 Commercial Street
First Floor
Boston, MA 02109
(617) 720-5509